George A. Manos and Louise G. Manos, Husband and Wife v. Commissioner. Manos Amusements, Inc. v. Commissioner.
Manos v. Commissioner
Docket Nos. 15638, 15639.
United States Tax Court
1949 Tax Ct. Memo LEXIS 24; 8 T.C.M. (CCH) 1025; T.C.M. (RIA) 49278; November 30, 1949
*24 The respondent determined deficiencies for the taxable years 1937 to 1941, inclusive, under the so-called bank deposit method; additions to the tax for fraud in each of said years; and a 25 per cent penalty for failure to file excess profits tax returns for each of the years 1940 and 1941. Held: 1. The amounts of various deductions to which the petitioners are entitled during the taxable years determined. 2. That a part of the deficiency in each of the years 1937 and 1939 was due to fraud with intent to evade tax. 3. That the respondent was justified in using the so-called bank deposit method in determining the petitioner's tax liability for 1941. 4. That no part of any deficiency for 1940 or 1941 was due to fraud with intent to evade tax. 5. That the respondent was correct in imposing a 25 per cent addition to the tax in 1940 and 1941 for petitioner's failure to file excess profits tax returns. Elmer J. Babin, Esq., and Cecil H. Kopperman, Esq., 1836 Euclid Ave., Cleveland, Ohio, for the petitioners. Clarence E. Price, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: These cases have been consolidated for trial and opinion. In Docket No. 15638, the respondent has determined deficiencies in individual income tax and 50 per cent additions to the tax for fraud for the years 1937 to 1939, inclusive, in the following amounts: Deficiency in
50% Addition
Year
Income Tax
to Tax
1937
$1,962.75
$931.38
1938
26.72
13.36
1939
196.48
98.24
Subsequent to the trial of the cases, the parties herein filed with the Court an agreement which serves to dispose of a number of the issues originally raised. The parties are now agreed that no deficiency in tax or addition to the tax for fraud is due by petitioners for the year 1938, and that the petitioners' net income for 1939 was $8,945.91. In respect to the years 1937 and 1939 the following issues *26 remain: 1. Whether the respondent's determination of petitioners' net income for 1937 in the amount of $21,670.82 should be reduced by $9,518.02 and $4,202.28 which petitioners claim represented deductible expense incurred by them during 1937 for repairs and other expenses evidenced by checks but not recorded on their books. 2. Whether the respondent was correct in imposing in respect to the deficiencies in tax for 1937 and 1939 a 50 per cent addition to the tax for fraud. In Docket No. 15639, respondent determined deficiencies in corporate income, declared value excess profits, and excess profits taxes, and additions to the tax for fraud and failure to file excess profits tax returns for the years 1940 and 1941 in the following amounts: Income Tax
Year
Deficiency
50% Penalty
25% Penalty
1940
$ 4,267.32
$2,133.66
1941
9,408.36
4,715.17
Totals
$13,675.68
$6,848.83
Declared Value Excess Profits Tax
1940
$ 3,298.32
$1,649.16
1941
6,411.85
3,205.93
Totals
$ 9,710.17
$4,855.09
Excess Profits Tax
1940
$ 3,869.03
$1,934.52
$ 967.26
1941
15,522.70
7,761.35
3,880.68
Totals
$19,391.73
$9,695.87
$4,847.94
The parties have *27 agreed that the net income of the petitioner, Manos Amusements, Inc., for the year 1940 was $15,021.12. In respect to its corporate tax liability for 1940 and 1941, the petitioner raises the following issues: 1. Whether the respondent was correct in imposing in respect to the deficiency in tax for 1940 a 50 per cent addition to the tax for fraud and a 25 per cent addition to the tax for failure to file an excess profits tax return. 2. Whether the respondent was correct in determining the petitioner's income for 1941 on the basis of an analysis of its various bank accounts rather than its books and records. 3. Whether the respondent, in determining the petitioner's gross income for 1941, erred in overstating the cash received by petitioner in that year in the amount of $1,119.57; in including Federal admission taxes in the amount of $9,267.84 in the petitioner's gross income for 1941; and in not excluding from its gross income an amount of $5,000 claimed by the petitioner to have represented an intra-bank transfer. 4. Whether the petitioner is entitled to deduct in 1941 the sum of $15,000 as salary to its principal officer stockholder rather than the sum of $7,770.04 allowed *28 by respondent, or, in the alternative, whether the petitioner is entitled to an additional allowance of $213.34 in 1941, representing payments made to its principal officer and stockholder in 1940 in excess of his 1940 salary. 5. Whether the petitioner is entitled to deduct in 1941 the sum of $6,347.85 as 1940 rental expenses which it claims was paid in 1941 and the sum of $24,200 for current rents. 6. Whether the respondent was correct in imposing, in respect to the deficiencies in tax for 1941, a 50 per cent addition to the tax for fraud and a 25 per cent addition to the tax for failure to file an excess profits tax return for that year. Findings of Fact Years 1937-1939 The petitioners, George A. Manos and Louise G. Manos, are husband and wife, residing in Toronto, Ohio. They filed joint income tax returns for the calendar years 1937, 1938, and 1939 on the cash basis with the collector of internal revenue for the 18th district of Ohio, at Cleveland, Ohio. George Manos came to the United States from Greece in 1910 and in 1917 entered the business of operating motion picture theatres. During the years in question, he operated the Rex and Manos Theatres in Toronto, Ohio, *29 and the Rex and Manos Theatres in Lisbon, Ohio, the title to such properties being held in the name of Louise Manos. In December, 1937, he located and thereafter operated the American Theatre at Leetonia, and the Globe Theatre at Columbiana, Ohio. In June, 1939, he also leased and thereafter operated the Roxy Theatre at Minerva, Ohio. The daily receipts from the sale of admission tickets at each theatre were reported on a daily box office statement which was prepared and signed by the cashier. The receipts shown on such daily reports were regularly deposited in a bank account maintained in a bank in the town in which the theatre was located. During the years in question, Manos from time to time presented so-called "percentage pictures" on which he paid a rental based upon the gross receipts realized from the showing of the films. Occasionally the film distributor would assign a checker to Manos' theatres to ascertain whether or not he was paying the full percentage on all tickets sold. In anticipation of a checker, Manos would instruct his employees a few days in advance to save a number of tickets collected at the door for resale on the days the percentage picture would be shown. *30 As the resale of such tickets was not registered on the ticket machine, the money realized from their sale was not reflected in the amount subject to the film distributor's percentage. By this practice Manos managed to sell a large number of tickets without paying the required percentage to the distributor. The receipts derived from such sales were posted on the daily box office reports as. "additional receipts" or "overage" and were deposited in the regular bank accounts but, pursuant to Manos' instructions, were not recorded in the business books. None of these receipts was reported in the petitioners' tax returns during the years 1937 to 1939, inclusive. From and after the imposition of the Federal admission tax on such tickets in 1940, such receipts were recorded in the business books and included in the petitioners' income tax returns. Manos also derived income from the sale of popcorn, candy, screen advertising, and miscellaneous items, and the rental of certain stores, apartments and offices which were located in the theatre buildings. All of this income was deposited in the regular bank accounts or in separate accounts maintained for the purpose. The books of the business *31 for 1937 contained no record of the income realized from the sale of popcorn, candy, and miscellaneous articles, nor was it reported in the petitioners' income tax returns for any of the years 1937 to 1939, inclusive. Petitioners did not personally handle any cash from business receipts. All income was deposited by the employees and all disbursements, except for petty cash items, were made by checks drawn on the various bank accounts. The checks so issued were signed by George Manos. The books for the business were maintained under a single entry system and consisted of a journal wherein daily receipts were entered in the first column and disbursements in other columns denominated as payroll, advertising, film rental, messenger service, supplies, office equipment, taxes, electric, coal, gas, theatre licenses, repairs, rent, water, telephone and telegraph, express and freight, legal expense, postage, gasoline, insurance, interest, give-a-ways, stage shows, and the miscellaneous account. The books contained no control accounts, no manner of balancing the books, and no effort was made therein to reconcile the various bank accounts. May disbursements made by check were not recorded *32 in the books. During 1937 the books were maintained by Julia Donofrio who was employed by Manos upon her graduation from high school. Julia, who had no previous bookkeeping experience, was paid $7.50 per week and spent half of her working day as secretary and bookkeeper and the remainder of her time acting either as cashier or ticket taker. In the latter part of 1937, Manos retained Nancy Murray as a replacement for Julia who left his employ in 1938. Nancy was paid a salary of $5 per week and retained her position through the year 1941. A typewritten summary of income and expense for 1937 was prepared by Julia from the books and attached to the petitioners' 1937 income tax return. This summary disclosed petitioners' gross income as $94,887.99, consisting of $92,727.99 from theatre receipts and $2,160 from rentals. Included in total reported expenditures of $113,152.50 were such items as "Air Conditioning $6,000", "Equipment $2,211.80", and "Purchase price of American and Globe $4,600". In their 1937 return, petitioners reported a net loss of $18,264.69. In the notice of deficiency, respondent determined that the petitioners realized net income for the year 1937 in the amount of *33 $23,304.54. Respondent determined that the gross receipts of the business for 1937 were $99,624.87 by totaling the deposits made in the bank accounts during 1937 and eliminating therefrom non-income items such as inter-bank transfers and loans. In reaching his net income figure, respondent thereafter allowed deductions totaling $76,320.33 which were disclosed by the books and other evidence presented by the petitioners. The petitioners claimed no deduction for depreciation in their 1937 income tax return. In recomputing petitioners' tax liability for the year 1937, respondent allowed deductions for depreciation totaling $5,896.45. Since the hearing of this case, the parties have made certain concessions which serve to reduce the net income determined by the respondent for 1937 from $23,304.54 to $21,670.82. Petitioners concede taxable net income for 1937 in the amount of $7,950.52. The difference between the net income for 1937 as determined by each party, amounting to $13,720.30, represents deductions claimed by petitioners in that year for repairs of $9,518.02 and unrecorded expenditures of $4,202.28. The books for 1937 contained a "Miscellaneous Expense" account containing *34 the sum of $7,085.08, the deduction of which was disallowed in full by the respondent as representing construction costs. A "Construction" account was also maintained on the books totaling $11,220.80 which respondent also disallowed in full. Petitioners claim they are entitled to deduct in 1937 the sum of $9,518.02, consisting of $6,439.60 of the "Miscellaneous" account and $3,078.42 of the "Construction" account as expenses incurred for repairs. In 1937, expenditures by check were made totaling $4,805.03 which were not recorded on the books, of which amount the petitioners claim $4,202.28 represented deductible items. A summary of income and expenses for 1938, similar to that used in 1937, was prepared by Nancy Murray from the books and filed with the petitioners' 1938 income tax return. The 1938 return reported income of $98,210.21 and expenses of $108,572.91, and a net loss from the year's operations of $10,362.70. Under the same method used in computing the petitioners' net income for 1937, respondent, in the notice of deficiency, determined petitioners' gross income for 1938 as $106,917.20, deductible expense as $101,849.12, and net income as $5,068.08. Subsequent to the hearing, *35 respondent has agreed that the petitioners are entitled to an additional deduction for film rental expense in the amount of $1,400, which reduces their net income to $3,668.08, and concedes that after the application of credits for dependents, no tax is due by the petitioners on this amount for 1938. The petitioners' 1939 income tax return was prepared by Nancy Murray in the same manner as their returns for prior years and reported gross income of $129,967.68, expenses of $125,334.32 and a net income of $4,633.36. The respondent, under the same method used in recomputing petitioners' income for 1937 and 1938, determined the petitioners' gross income as $132,596.30, deductible expense as $123,650.39 and net income as $8,945.91, which figure the petitioners now agree represents their correct net income for 1939. A part of the deficiency for each of the taxable years 1937 and 1939 is due to fraud with intent to evade tax. Opinion 1937-1939 The parties are agreed that no tax is owing by the petitioners for 1938 and that their net income for 1939 was $8,945.91. In respect to 1937, however, petitioners contest the respondent's determination of net income in the amount of $21,670.82, *36 contending that there should be eliminated from this sum the amounts of $9,518.02, representing deductible expense for repairs, and $4,202.28, representing other expenses evidenced by checks which were not recorded on the books of the business. During 1937, there was maintained on the books a "Construction" account wherein expenditures of $11,220.80 were recorded which the respondent, in computing petitioners' net income for 1937, disallowed in full as non-deductible construction costs. The respondent also disallowed as construction costs expenditures in the amount of $7,085.08 which had been recorded on the books in a "Miscellaneous" account. Petitioners contend that $6,439.60 of the amount appearing in the "Miscellaneous" account and $3,078.42 of the amount appearing in the "Construction" account, or a total of $9,518.02, represent deductible expenses for repairs for which the respondent has granted them no allowance. In support of their contention, the petitioners have introduced a schedule which purports to reflect an analysis of the "Construction" and "Miscellaneous" accounts and the segregation of various amounts recorded therein which they claim actually represented expenses *37 for repairs. At the hearing, the petitioners produced the accountant who prepared the schedules and who testified that he had, with the help of Manos, segregated the many items of expense contained in both accounts, classified them as to their deductibility, and determined therefrom that the business had incurred deductible expense for repairs during 1937 in the amount of $9,518.02. It is axiomatic that a deduction is a matter of legislative grace and that it is incumbent upon a taxpayer claiming the benefit thereof to show that the deduction claimed falls within the intendment of the statute. It is also recognized that the respondent's determination is presumptively correct and that the burden of showing error herein rests upon the petitioner. This is especially true where, as here, the respondent is forced to resort to unusual means of determining net income because of the taxpayer's failure to maintain adequate business records. Petitioners' accountant testified that the accounts were analyzed and classified in accordance with Manos' identification of each item of expense contained therein. The parties also agreed that Manos, if questioned in respect to these expenditures, would *38 testify to the same effect as the accountant. However, the testimony of the accountant, or for that matter the testimony of Manos himself, that such expense was incurred and was deductible would not, of itself, establish the petitioners' right to its deduction. The problem of classifying items of expense as repairs or capital expenditures requires an examination of the nature and extent of the additions or replacements, their function in the operation of the business, and all the attendant circumstances. In the present record there is no evidence to show that Manos' through his accountant, properly segregated capital expenditures from current expense for repairs in the analysis of the "Construction" or "Miscellaneous" accounts carried on the books. Nor is there any evidence from which we may draw an independent conclusion as to the deductibility of such items. Moreover, the record does not refute the respondent's suggestion that some part of the expenditures petitioners claim they may deduct has been accounted for in other categories of expense and thus allowed by the respondent in reaching his determination of the petitioners' net income. It is interesting to note in this regard *39 that although the petitioners argue that they are entitled to an additional deduction of $9,518.02 for repairs on the four theatres owned in 1937, no depreciation on these properties was claimed by them in their 1937 income tax return, whereas the respondent has determined that they are entitled to a deduction for depreciation in that year of $5,896.45. In short, the petitioners have produced no satisfactory evidence in support of their claim for an additional deduction of $9,518.02 for the expense of repairs incurred during the year 1937. For that reason, we have no alternative but to sustain the respondent in his treatment of the expenditures contained in the "Construction" and "Miscellaneous" accounts on petitioners' books for 1937. Much the same situation exists in respect to the petitioners' claim that they are entitled to an additional deduction of $4,202.28 representing deductible expenses evidenced by checks but unrecorded on their books. Petitioners, in support of their claim, rely on summaries prepared by their accountant who, with the assistance of Manos, identified and classified each check according to the nature of the expenditure involved and its deductibility. *40 However, the petitioners have made no effort to establish affirmatively other than by their own allegation that the expenses they represent have not already been allowed in whole or in part by the respondent in reaching his determination of net income for 1937. As in the case of the petitioners' claim for deductions for the alleged expense of repairs, their conclusion that they are entitled to the allowance of additional deductions of $4,202.28 finds no factual support in the record other than their accountant's statement that the petitioners have in their possession checks totaling $4,805.03, not recorded on the books, of which he has concluded that $4,202.28 represents deductible expense incurred during 1937. Testimony of this character is not sufficient to establish the point unless it is supported by a showing of the actual expenditures, their nature, and the other facts necessary to establish their deductibility under the revenue laws. Therefore, the respondent's determination that petitioners were not entitled to additional deductions for 1937 in the amount of $4,202.28 is sustained. The sole remaining question in respect to the years 1937 to 1939, inclusive, concerns the *41 respondent's imposition of a 50 per cent addition to the tax for fraud in each taxable year. As a result of the agreement of the parties that the petitioners owe no tax for 1938, the 50 per cent addition to tax for fraud originally imposed by the respondent for 1938 is no longer in issue. Petitioners reported in their income tax return for 1937 a net loss of $18,264.69. Respondent has determined their net income for 1937 to be $21,670.82 and the petitioners now admit net income for that year in the amount of $7,950.52. Petitioners' concession thus involved an understatement of net income for 1937 in excess of $26,000. Petitioners reported net income for 1939 in the amount of $4,633.36 and now agree with the respondent that their correct net income for that year was $8,945.91. Petitioners argue, however, that the omissions from their reported gross income in 1937 and 1939 were no more than approximately 3.3 per cent and 2 per cent respectively, of the amounts reported on their return, and that the large discrepancies in net income resulted from claiming deductions to which they were not entitled. They admit that their returns were in fact nothing more than a report of cash receipts *42 and disbursements but point out that no effort was made to conceal the erroneous deductions claimed for what were unquestioned capital outlays. They also emphasize that all business receipts were deposited in various bank accounts and that there is no evidence that they withdraw cash at any time from business income for their own personal use. That petitioners' returns reflect carelessness and negligence in their preparation seems to be conceded. But we are convinced that something more than negligence appears in this case and that the record contains clear and convincing evidence that a part of the deficiency for each of the years 1937 and 1939 was due to fraud with intent to evade tax. Manos freely admits that during the taxable years in question and until the imposition of the Federal admission tax on July 1, 1940, it was the usual practice to conceal his true income from the showing of socalled percentage pictures. The collection and resale of tickets and the omission of such receipts from the business books were carried out in accordance with the instructions of the petitioner, George Manos. It is clear that such receipts, recorded as "additional income" or "overage" on the *43 daily box office reports, were not reported in the petitioners' income tax returns. The only possible conclusion that may be drawn from Manos' use of such a scheme is that it was intended to deceive or mislead anyone who might resort to the books for evidence of his true income. When an intelligent person, experienced in business methods and acquainted, as was Manos with the tax responsibilities of every citizen, plans and carries out a scheme to defraud, it must be presumed that he thereby intends to defraud all who would, in the ordinary course of events, be affected by his fraudulent conduct. Having made no effort at any time to include such receipts in their income tax returns for the years of 1937 and 1939, we do not think that the petitioners now may contend that it was Manos' intention to deceive only the film distributors and not his intention to understate his true income for tax purposes. Moreover, there is evidence that all or some part of miscellaneous receipts, representing income from the sale of popcorn, candy, and miscellaneous items, was omitted from the petitioners' income tax return for 1937, for which the petitioners have been unable to offer any reasonable *44 explanation. In our opinion, the record establishes by clear and convincing evidence that the petitioners, with intent to evade tax, filed false and fraudulent income tax returns for the years 1937 and 1939. Therefore, the respondent's imposition of a 50 per cent addition to the tax for fraud in each year is sustained. Findings of Fact Years 1940-1941 The petitioner, Manos Amusements, Inc., was incorporated in December, 1939, and all of its capital stock except qualifying shares was issued to George A. Manos. Petitioner's Federal tax returns for 1940 and 1941, which were filed with the collector of internal revenue for the 18th district of Ohio, were prepared by Lynn R. Riddle, an attorney, from a statement of receipts and disbursements compiled by Nancy Murray from the corporate books. No excess profits tax return was filed by the corporation in either year. Petitioner reported gross income for 1940 in the amount of $155,790.03 and deductible expense in the amount of $155,893.47, resulting in a net loss for the year of $103.44. In the notice of deficiency, respondent determined petitioner's gross income for 1940 as $159,825.92 and its net income as $25,299.79. As the *45 result of various concessions made subsequent to the hearing, it is now agreed by the parties that the net income of the petitioner for 1940 was $15,021.12. In its 1940 tax return, petitioner claimed a deduction of $6,313.75 as salary paid to George A. Manos, of which amount respondent allowed $5,113.98. The remaining amount of $1,199.77 was disallowed by the respondent as not having been actually paid to Manos in 1940. Respondent has now conceded that the petitioner is entitled to a deduction in the amount claimed as it also paid in 1940 the sum of $1,413.11 on Manos' indebtedness over and above the $5,113.98 actually paid to Manos, the total payments exceeding the deduction of $6,313.75 claimed by $213.34. During the years 1940 and 1941, petitioner continued the operation of the theatres which had been operated in previous years by George Manos in his individual capacity. Title to the real estate in which the Toronto and Lisbon Theatres were located had been conveyed by George Manos to Louise Manos without consideration in 1927. There were no leases of any kind between the petitioner and Louise Manos and the rent paid by the petitioner was determined by George Manos on the *46 basis of the income derived from each theatre without consulting his wife. In 1940, petitioner claimed a deduction of $19,540.08 for rent paid, consisting of the sum of $13,800 which George Manos determined to be the rent petitioner would pay to Louise Manos for the four theatre buildings owned by her, and $5,740.08 paid as rent to others. The respondent allowed as a deduction rent in the amount of $5,740.08 paid to outside parties, and $5,228.93 of the $13,800 claimed by the petitioner as rent paid to Louise Manos. The parties have now agreed that of the $13,800, the sum of $7,452.15, representing amounts actually paid by the petitioner on account of the property and obligations of Louise Manos, is deductible by the petitioner in 1940. Federal admission taxes on all admissions in excess of 20 cents were levied by the Revenue Act of 1940, effective July 1, 1940. The taxes so collected by the petitioner were deposited in its bank accounts. The respondent treated an amount of $1,675.69, collected as admission tax, as income and correspondingly allowed that amount paid out by petitioner as a deduction. The respondent concedes that an amount of $2,941.67 included in the books of petitioner *47 as a payment to one Frank Grove and treated as income by respondent should be excluded from the income of the petitioner, thereby reducing the net income in a like manner. No part of the deficiency for the taxable year 1940 was due to fraud with intent to evade tax. Petitioner's books for 1941 disclosed total receipts of $169,798.65. Petitioner's income tax return for 1941 reported gross income in the amount of $193,727.48. In the notice of deficiency, respondent determined petitioner's gross income, under the same system as used in prior years, to be $214,441.08. Petitioner's books reflected a loss for the year 1941 in the amount of $58,954.97; its income tax return for 1941 showed a net gain of $104.63; and the respondent in the notice of deficiency determined that the petitioner realized net income for the year 1941 in the amount of $48,887.09. Respondent now concedes that an additional $375 should have been allowed as an inter-bank transfer in 1941, reducing his determination of gross income from $214,441.08 to $214,066.08. On October 23, 1941, a loan in the amount of $5,000 was obtained by the petitioner and deposited in the G. A. Manos concession account at the Minerva *48 Bank. On October 29, 1941, this $5,000 was withdrawn from the concession account and deposited in a "theatre" account maintained by the petitioner at the same bank. In computing petitioner's gross receipts for 1941 under the bank deposit system, respondent eliminated transfers between the petitioner's various bank accounts in the amount of $57,861.69. During 1941, petitioner deposited in bank accounts the sum of $9,267.84, representing Federal admission taxes. In reaching his determination of petitioner's 1941 gross income, the respondent included the amount of such taxes in the petitioner's income and allowed a corresponding deduction for the payment thereof to the Government in determining its net income. In determining petitioner's income on the bank deposit method, respondent included $17,016.60 in petitioner's gross income for 1941 as cash collected by it but not deposited in its bank accounts. This sum has since been reduced by the respondent by the amount of $11,735.86 to a figure of $5,280.74. George Manos fixed his salary from the petitioner for 1941 at $15,000. This amount was deducted as salary expense by the petitioner in its 1941 income tax return and included by Manos *49 in his 1941 individual income tax return, although only $7,770.04 of the $15,000 was actually drawn by Manos during 1941. Respondent allowed petitioner a deduction for salary expense in the amount of salary actually paid Manos, or $7,770.04. Checks drawn against the petitioner's bank accounts and corporate notes were signed by Manos who in his sole discretion drew whatever sums he desired from the corporation. During the years 1940 and 1941, the petitioner, Manos, and his wife were all on the cash receipts and disbursements basis. In April, 1941, the Carol Theatre in Newton Falls, Ohio, was acquired in the name of Louise Manos at a price of $23,000, $14,000 of which was paid by the petitioner and the balance represented by two mortgages against the property. During 1941, this theatre was remodeled at a cost of $7,000 which was paid by the petitioner. During 1941, a lot was acquired in Newton Falls in the name of Louise Manos at a cost to the petitioner of $3,500. In that year, the construction of a new theatre on this lot was commenced by petitioner which was completed in 1942. The petitioner expended $54,887.65 during 1941 on behalf of Louise Manos in payment of interest and *50 principal on loans, real estate taxes, the purchase of real estate and the remodeling and construction on real property owned by her. Respondent has allowed the petitioner no deductions for property taxes, depreciation, or interest expended by it in respect to the theatre properties held in the name of Louise Manos. The petitioner claimed a deduction of $30,000.08 for rents paid in its 1941 income tax return, of which amount $24,200 represented the rental determined by Manos for theatre properties held in the name of his wife and $5,800.08 represented rents paid to other persons. In the notice of deficiency, the respondent allowed a deduction for rent in the amount of $11,993.37, consisting of the $5,800.08 and $6,193.29 of the $24,200 claimed by petitioner as rent paid to Louise Manos. The respondent now admits that an amount in excess of $24,200 was paid by the petitioner during 1941 on the property owned by Louise Manos. The petitioner is entitled to deduct as rent paid to Louise Manos during 1941 the sum of $16,200. No part of any deficiency for 1941 was due to fraud with intent to evade tax. Opinion 1940-1941 During the years 1940 and 1941 the business formerly operated *51 by George Manos, individually, was incorporated as "Manos Amusements, Inc.", all the stock of which, with the exception of qualifying shares, was owned by Manos. The parties have agreed that the corporate petitioner's net income for 1940 was $15,021.12 rather than a net loss of $103.44 as reported in its 1940 income tax return. Petitioner, however, contests the respondent's imposition of a 50 per cent addition to the tax for fraud in respect to the deficiency in tax for 1940. In its 1940 income tax return, petitioner reported gross income of $155,790.03, whereas the respondent, by use of the petitioner's bank accounts, determined its gross income as $159,825.92. Since the hearing, respondent has conceded that $2,941.67 should be excluded from the petitioner's income, and that the sum of $1,675.69 representing Federal admission taxes was included in petitioner's gross income for 1940. Eliminating these sums from the respondent's determination reduces the respondent's finding of gross income to an amount slightly less than that reported by the petitioner in its 1940 tax return. Although it is impossible to determine the exact source of the deficiency in tax for 1940 from the record *52 or the subsequent agreement filed by the parties, it appears that the deficiency stems wholly from the disallowance of various deductions claimed in the 1940 return. There is no evidence in the record to support a conclusion that the petitioner falsely or fraudulently claimed excessive deductions or nondeductible expenses with an intent to evade tax. There is ample evidence of ignorance and negligence on the part of those responsible for the filing of its 1940 return but this does not constitute fraud within the meaning of the statute. Mitchell v. Commissioner, 118 Fed. (2d) 308; William W. Kellett, 5 T.C. 608, 618. Moreover, there is no evidence that the receipts withheld from the film distributors on percentage pictures or miscellaneous receipts from the sale of candy and popcorn were not reflected in the petitioner's 1940 return. On the contrary, it appears that all miscellaneous receipts for that year and all ticket receipts, including those receipts which were not recorded on the petitioner's books, were actually reported in its 1940 Federal tax returns. In the absence of any clear or convincing evidence to justify a finding of fraud, it is our *53 conclusion that the respondent erred in imposing a so-called 50 per cent fraud penalty for the year 1940. The liability of the petitioner for a 25 per cent addition to the tax for failure to file an excess profits tax return for the year 1940 will be treated in connection with the disposition of the same issue for 1941 at a later point herein. Petitioner raises a number of issues in respect to the respondent's redetermination of its tax liability for 1941. Initially, petitioner challenges the respondent's authority to abandon its corporate books and reconstruct its income on the basis of its bank deposits. There can be no doubt that the respondent may disregard a taxpayer's books and turn to other evidence of taxable income where the books are so inadequate or inaccurate that they fail substantially to reflect the tax - books reflected a net loss for 1941 of $58,954.97, its income tax return showed a net gain of $104.63. The wide differences between the books and return in respect to petitioner's income and expense for 1941, which as yet have not been satisfactorily explained by the petitioner, certainly constituted reasonable cause for the respondent to seek other means of determining *54 the petitioner's net income for that year. The method selected by the respondent, based upon the petitioner's deposits in its various bank accounts during 1941, is one commonly accepted by the courts in similar situations. In our opinion, the respondent did not err in resorting to such sources rather than relying on the petitioner's books in redetermining petitioner's taxable income for 1941. Petitioner further contends that the respondent erred by including in its gross income for 1941 the sum of $1,119.57 as representing cash collected but not deposited in petitioner's bank accounts; by refusing to exclude from its gross income the amount of $5,000 which petitioner alleges represented an intra-bank transfer; and by including $9,267.84 collected by petitioner as Federal admission taxes in its gross income for 1941. In the notice of deficiency the respondent included in the petitioner's gross income for 1941 the sum of $17,016.60 as cash collected and expended by the petitioner which was not deposited in and withdrawn from its several bank accounts. Since that time, the respondent has reduced this amount to $5,280.74 by excluding $11,735.86 for which the petitioner was able to *55 and did produce checks. Petitioner claims that it is entitled to a further reduction of $1,119.57. Petitioner, however, has not produced checks in this amount, nor has it made any effort to prove or identify the expenses or show that they were paid by checks not accounted for in the respondent's allowance. Under such circumstances, the respondent's figure must be sustained. Petitioner also contends that the respondent has included in its gross income a deposit in the sum of $5,000 which in fact represented an intra-bank transfer of funds. We have found as a fact that it borrowed and deposited $5,000 in its concession account on October 23, 1941, and that this amount was later transferred to its regular bank account in the same bank on October 29, 1941, and there can be no doubt that this amount must be excluded by the respondent in determining the petitioner's gross income under the bank deposit system. The difficulty in the instant case arises from the fact that it is impossible to determine on the basis of the evidence before us whether or not the respondent has already excluded this transfer in his determination. The petitioner has introduced an exhibit disclosing transfers between *56 the accounts it maintained in different banks during 1941 totaling $52,643.43. Adding to this amount the intra-bank transfer of $5,000, it would appear that the petitioner was entitled to have a total amount of $57,643.43 excluded from its bank deposits during 1941 in determining its gross income on that basis. The record shows that the respondent has excluded such transfers in the amount of $57,861.69 which would indicate that the intra-bank transfer of $5,000 which the petitioner claims herein had been accounted for in the respondent's determination. Unless the parties are able to reach an agreement incident to the recomputation proceedings under Rule 50 that the petitioner has not received credit for this transfer, we have no alternative under the circumstances but to deny the petitioner's claim that the amount of $5,000 should be excluded from its gross income for 1941 as determined by the respondent. The respondent has included in the petitioner's gross income for 1941 the amount of $9,267.84, representing Federal admission taxes collected by the petitioner during that year, and in determining petitioner's net income allowed a corresponding deduction. The respondent now concedes *57 that the admission taxes so collected did not constitute income to the petitioner in 1941. In respect to the petitioner's tax liability for the year, the question is purely academic as the respondent has allowed a deduction in the same amount in computing the petitioner's net income. On the other hand, we are of the opinion that the petitioner is correct in its contention that the admission taxes in question may not properly be included in its gross income for 1941 for the purpose of showing that the petitioner fraudulently understated its true income with intent to evade tax. In the determination of its gross income for that purpose, the amount of the tax collected must be excluded. Petitioner raises two issues in regard to its allowable deduction for salary expense in 1941. It is conceded by the parties that the petitioner in 1940 made payments to or on the behalf of George Manos, totaling $6,527.09. Of this amount, respondent has allowed a deduction of $6,313.75, representing the amount claimed by the petitioner in its 1940 tax return as a deduction for salary paid to Manos. Petitioner *58 argues that it may credit against Manos' 1941 salary and deduct in 1941 the $213.34 paid in 1940 for which no deduction was claimed in its return for that year. With this position we cannot agree. Petitioner has not shown that the $213.34 was in fact paid as salary to Manos or was in the nature of an advance payment of his 1941 salary. In fact, the record discloses that Manos fixed his 1941 salary as $15,000, and petitioner claimed a deduction in that amount on its 1941 return. This is no evidence that the $213.34 was ever considereed by the petitioner as salary in either year. Moreover, the petitioner maintained its books and filed its returns on the cash receipts and disbursements basis. Having actually paid the sum in question during 1940, it clearly may not claim its deduction in a succeeding year. Cf. Security Flour Mills Co. v. Commissioner, 321 U.S. 281. Of the $15,000 salary expense deducted by the petitioner and reported as income by Manos in 1941, the respondent has allowed $7,770.04. The respondent contends that the petitioner, being on the cash basis, may deduct as salary expense only such sums as were actually paid to Manos during the year. Petitioner *59 bases its claim that the entire $15,000 is deductible upon the theory that the whole amount was constructively received by Manos during 1941, and in support of its contention relies upon such cases as Michael Flynn Mfg. Co., 3 T.C. 932; Ohio Battery & Ignition Co., 5 T.C. 283; and Richards' Estate v. Commissioner, 150 Fed. (2d) 837. It is clear from an examination of those cases that to constitute constructive receipt, money must be placed unconditionally at the disposal of the payee without substantial limitations or restrictions as to the time, manner, or condition upon which payment is to be made. Petitioner argues that Manos had complete control of its bank accounts, signed all checks and could have drawn any amount he desired from the company. However, it has not been shown by the petitioner that the $15,000 claimed as salary expense was ever awarded by corporate resolution to Manos as his 1941 compensation, or that such an amount was ever credited on its books subject to an unlimited or unrestricted right on Manos' part to withdraw all or any *60 part thereof. There is no evidence that Manos' salary was not fixed by him in the same manner as the rent paid to his wife, that is, based upon the ability of the business to pay. We do not think that where, as here, the parties recognize the separateness of a corporation from its sole stockholder, the latter's control as its sole stockholder constitutes, in itself, sufficient control over corporate salary policies and financial affairs to justify the conclusion that any amount he might have drawn during 1941 must be deemed to have been constructively received by him in that year. In the absence of any evidence that the $15,000 claimed was actually and unconditionally set aside by the petitioner in 1941, subject only to withdrawal by Manos as salary, the respondent's disallowance of all amounts in excess of $7,770.04 must be sustained. The petitioner claimed in its 1940 income tax return a deduction for rents in the amount of $19,540.08, consisting of $13,800 as rent paid to Louise Manos and $5,740.08 as rent paid to outside parties. The respondent has allowed the deduction of the $5,740.08 and the parties are now agreed that $7,452.15 of the $13,800 claimed as rents paid to Louise *61 Manos may also be deducted by the petitioner in 1940. On its 1941 income tax return, petitioner claimed a deduction for rents in the amount of $30,000.08, consisting of $24,200 as rent paid to Louise Manos and $5,800.08 as rent paid to others. The respondent has allowed a deduction of $11,993.37, consisting of the $5,800.08 and $6,193.29 of the $24,200 claimed as payments to Louise Manos. The respondent concedes that during 1941 the petitioner expended amounts in excess of the $24,200 claimed on property owned by Louise Manos. The petitioner now argues that it is entitled to a deduction for rent paid to Louise Manos in 1941 of $30,547.85, which comprises the $24,200 claimed in its 1941 return and the $6,347.85 representing the disallowed portion of the deduction of $13,800 claimed in 1940. The respondent has recognized the separateness of the petitioner, George Manos, and Louise Manos as taxpayers, and in so doing has recognized Louise Manos' ownership of the theatre properties and the petitioner's obligation to pay rental for their use. As the respondent determined the deficiencies herein under the bank deposit method, he did not in the notice of deficiency specifically disallow *62 the deductions claimed by the petitioner as rental expense in its 1940 and 1941 returns. For the same reason, the petition does not allege as error the respondent's failure to allow the deductions for rent in the amounts claimed. The agreement filed by the parties subsequent to the hearing states that the parties will clarify their position on the rent issue upon brief. On brief, the respondent attacks the reasonableness of the rent fixed by George Manos as due Louise Manos for the year 1941 and argues that his allowance of $6,193.29 for rent to her in that year constitutes a reasonable and generous allowance. Petitioner points out that the respondent agrees that it expended an amount in excess of the $24,200 claimed on behalf of Louise Manos during 1941 and argues that this fact establishes the deductibility of that amount. We have held that where rent is paid or incurred during the taxable year as the result of an arm's length transaction and there is no evidence that the payments were in fact gifts or the distribution of dividends, section 23 (a) (1) (A) does not limit deductions for rental *63 payments to a reasonable allowance as in the case of salary or compensation. Stanley Imerman, 7 T.C. 1030. On the other hand, where there is evidence that some part of the rent paid in fact constituted dividends or gifts, the lessee has been limited to the deduction of rent in an amount determined to be "required" for the continued use or possession of the property. Limericks, Inc., 7 T.C. 1129, aff'd, Limericks, Inc. v. Commissioner, 165 Fed. (2d) 483. All of the theatre properties owned by Louise Manos were acquired by her as gifts from her husband, George Manos. In 1941, the Carol Theatre was purchased in the name of Louise Manos, as was a lot upon which the construction of a new theatre was commenced. Other funds were expended by the petitioner in her behalf for taxes, interest, payments on the principal of loans, and the remodeling of buildings located on such properties. The petitioner has shown that it expended in 1941 the sum of $54,887.65 for such purposes. Petitioner seeks to identify and deduct payments of this character as rental paid to Louise Manos. The record indicates that no written leases or, for that matter, no agreement *64 or arrangement of any kind existed between the petitioner and Louise Manos requiring the payment of rent. The rental petitioner has deducted was fixed in each year by George Manos without the consent or knowledge of his wife on the basis of the business income. Moreover, there is no evidence that Louise Manos ever actually received any payment of rent from the petitioner or that she was ever permitted to exercise any control over the expenditure of the money spent in her behalf or the management, financing, purchase, or improvement of the properties held in her name. It is abundantly clear that the rents fixed by George Manos and claimed by the petitioner for 1940 and 1941 were not the result of an arm's length transaction. The fact that petitioner itself did not claim as a rental deduction the entire amount expended on property held in the name of Louise Manos is also evidence that it considered the greater part of that amount as something other than rent. As pointed out above, for the year 1940 the respondent allowed a deduction in the sum of $7,452.15 as rent paid by the petitioner to Louise Manos, which amount represented the exact expenditures made by the petitioner on her *65 behalf in that year. Whether the full amount claimed of $13,800 would have been allowed as a deduction if the petitioner had paid such an amount during the year is not spelled out in the record. It is true that the respondent's initial allowance for rent to Louise Manos was increased from $5,228.93 to $7,452.15 on a showing by petitioner that it had in fact paid that sum. It is by reason of this circumstance that petitioner now argues that the reasonableness of the rental of $13,800 was never in dispute for the year 1940. While we cannot entirely accept petitioner's position in this matter, it does seem clear to us that the allowance of only $6,193.29 as rent to Louise Manos for the year 1941 when there was a fifth theatre owned by her and in operation by petitioner seems to be a completely unreasonable position for the respondent to take. The additional theatre in operation in 1941 was the Carol, which had been purchased in April of that year for $23,000 and upon which $7,000 was thereafter expended in its remodeling. The record does not disclose when this theatre actually began operation nor its gross receipts for the year. It does appear that George Manos fixed the rents petitioner *66 was to pay Louise Manos on the basis of the income derived from each theatre and it is a fact that there was in 1941 an appreciable increase in such income over that received in 1940. After careful consideration of all the available evidence, it is our judgment that the petitioner is entitled to deduct as an allowance for rent paid to Louise Manos in 1941 the amount of $16,200 for all five theatres owned by her and operated by petitioner. It is our further opinion that the petitioner is not entitled to deduct $6,347.85 in 1941 representing the disallowed portion of the deduction for rent it claimed in 1940. The petitioner claimed a deduction of $24,200 on its 1941 return which it identified as 1941 rent paid to Louise Manos and, until the present case arose, no suggestion was made that other sums expended in her behalf during 1941 were related to 1940 rent. In our opinion, petitioner's present effort to attribute $6,347.85 of the sums expended in 1941 on properties owned by Louise Manos as 1940 rent is contrary to all the evidence of record and for that reason must be disallowed. The respondent has also imposed a 50 per cent addition to the tax for fraud in respect to the deficiencies *67 for 1941. It appears that in 1941 an attempt was made by petitioner to include its receipts from all sources in its books and income tax returns. Its books were maintained by the same employee who had previously performed these duties and its returns were prepared by its attorney. The amount of gross income omitted from its 1941 return appears at most to have been approximately five per cent of the amount reported. The evidence indicates that the omission of such an amount was attributable to the inadequacy of the petitioner's books, the background and inexperience of the petitioner's bookkeeper, and the careless fashion in which the petitioner's financial affairs were handled, rather than to any plan or intention to understate its income for Federal tax purposes. Therefore, it is our conclusion that no part of any deficiency in tax for 1941 was due to fraud with intent to evade tax and that the respondent erred in imposing a 50 per cent addition to the tax for fraud for that year. The final issue relates to the respondent's imposition of a 25 per cent addition to the tax for 1940 and 1941, provided by section 291(a) of the Internal Revenue Code, for failure *68 to file an excess profits tax return in each year. Petitioner argues that its returns in each year were prepared by competent counsel and that because the net income so determined was less than the amount which would require the filing of excess profits tax returns, no such returns were filed. We have held in the past that a taxpayer's mistaken belief that no return is required under the law does not constitute reasonable cause for failure to file a return so as to relieve the taxpayer of the penalty. P. Dougherty Co., 5 T.C. 791, aff'd, 159 Fed. (2d) 269, certiorari denied, 331 U.S. 838. See Taylor Securities, Inc., 40 B.T.A. 696; Burford Oil Co., 4 T.C. 613, aff'd, 153 Fed. (2d) 745; West Side Tennis Club, 39 B.T.A. 149, 160, aff'd, 111 Fed. (2d) 6, certiorari denied, 311 U.S. 674. It may well be, as the petitioner suggests, that it was advised by the attorney who prepared its returns that the filing of an excess profits return for either taxable year was unnecessary. *69 However, the petitioner's counsel prepared its returns on the basis of statements prepared by its bookkeeper from the books and apparently had no first hand knowledge of the state of the petitioner's books and records or the fact that petitioner's books did not adequately reflect its income and expense. Moreover, we do not believe that where, as here, the taxpayer's mistaken impression as to the amount of his taxable income is due to his own negligence or indifference in the maintenance of business records, he may cite his mistake as reasonable cause for the failure to file necessary tax returns. Therefore, it is our opinion that the 25 per cent addition to the tax was properly imposed by the respondent for both years. Decision will be entered under Rule 50.